No. 22-6049

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DEVIN D. MCGUIRE,

*Plaintiff-Appellant*,

v.

LOUDON COUNTY JAIL, JAILER BROCKWELL, JAILER WARD, JAILER KEENER

*Defendants-Appellees*.

On Appeal from the United States District Court for the Eastern District of Tennessee, No. 3:22-cv-00217
Before the Hon. Thomas A. Varlan

## PLAINTIFF-APPELLANT'S OPENING BRIEF

Megha Ram
Cal Barnett-Mayotte*
RODERICK & SOLANGE MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington, DC 20002
(202) 869-3439
megha.ram@macarthurjustice.org
cal@macarthurjustice.org

* Admitted to the Pennsylvania bar. Not admitted to the DC bar. Practicing from DC under the supervision of DC-licensed attorneys at the MacArthur Justice Center.

*Counsel for Devin D. McGuire*

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellant Devin McGuire respectfully requests oral argument because this case involves important issues regarding capacity determinations in civil rights cases. Oral argument will aid the Court by allowing Plaintiff-Appellant to explore the issues presented in his appeal and respond to any inquiries raised.

## DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST

Pursuant to Sixth Circuit Rule 26.1, Appellant Devin D. McGuire makes the following disclosure:

Is said party a subsidiary or affiliate of a publicly owned corporation? **No.**

Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? **No.**

Dated: May 11, 2023　　　　　　　　　　　　　　　*/s/ Megha Ram*
　　　　　　　　　　　　　　　　　　　　　　　Megha Ram

ii

# TABLE OF CONTENTS

STATEMENT IN SUPPORT OF ORAL ARGUMENT ......................................... ii

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL
      INTEREST ......................................................................................... ii

TABLE OF AUTHORITIES ..........................................................................v

STATEMENT OF JURISDICTION...............................................................1

INTRODUCTION ......................................................................................2

STATEMENT OF ISSUES ..........................................................................4

STATEMENT OF THE CASE.......................................................................5

I.      Factual Background ......................................................................5

      A.     Mr. McGuire is assaulted by Officers Brockwell, Ward, and Myers just
      hours after entering Loudon County Jail. ...............................................5

      B.     Mr. McGuire is assaulted by Captain Keener approximately nine days
      after sending in his complaint about the first assault. ....................................7

II.     Procedural History .......................................................................8

SUMMARY OF ARGUMENT ........................................................................11

STANDARD OF REVIEW ............................................................................13

ARGUMENT ............................................................................................14

I.     Mr. McGuire's fourth filing supplemented—rather than superseded—
his previous filings. ........................................................................14

II.    Mr. McGuire sued defendants in their individual, not solely official,
capacities. .....................................................................................20

      A.     The course of proceedings test, applied to all of Mr. McGuire's
      pleadings, shows an individual capacity suit.................................................23

      B.     The course of proceedings test, applied to Mr. McGuire's fourth
      pleading, shows an individual capacity suit. .................................................28

III.   Mr. McGuire's allegations showed the personal involvement of each defendant in an excessive force violation. ...........................................................31

    A.   Mr. McGuire's pleadings, taken together, adequately allege defendants' personal involvement in excessive force violations. .................32

    B.   Mr. McGuire's fourth filing adequately alleges defendants' personal involvement in excessive force violations.....................................................35

IV.   Mr. McGuire was entitled to one opportunity to amend his complaint after receiving notice of deficiencies. ...................................................................37

CONCLUSION ....................................................................................................41

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7) .................42

CERTIFICATE OF SERVICE .............................................................................43

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............44

## TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Berndt v. State of Tenn.*,
796 F.2d 879 (6th Cir. 1986) ..................................................................39

*Binay v. Bettendorf*,
601 F.3d 640 (6th Cir. 2010) ..................................................................33

*Black v. Parke*,
4 F.3d 442 (6th Cir. 1993) .....................................................................13

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
342 F.3d 634 (6th Cir. 2003) .................................................................13, 38, 40

*Brancho v. Alexander*,
No. 5:10CV1160, 2010 WL 4054395 (N.D. Ohio Oct. 14, 2010) .....................18

*Brent v. Hyundai Cap. Am.*,
No. 14-2600-STA-DKV, 2014 WL 7335415 (W.D. Tenn. Dec. 19, 2014) ..........................................................................................................18

*Briggs v. Hogan*,
No. 21-5581, 2022 WL 985825 (6th Cir. Apr. 1, 2022)..............................24, 26

*Brown v. Matauszak*,
415 F. App'x 608 (6th Cir. 2011) ....................................................16, 21, 38, 39

*Brown v. Med. Staff at Core Civic*,
No. 3:21-CV-00527, 2021 WL 4894603 (M.D. Tenn. Oct. 20, 2021) ..........................................................................................................30

*Burgess v. Fischer*,
735 F.3d 462 (6th Cir. 2013) .................................................................35

*Burley v. Knickerbocker*,
No. 18-CV-12625, 2019 WL 2610895 (E.D. Mich. June 26, 2019)..................38

*Burley v. Knickerbocker*,
No. 18-CV-12625, 2019 WL 3330804 (E.D. Mich. Apr. 24, 2019) .................38

*City of Newport v. Fact Concerts, Inc.*,
   453 U.S. 247 (1981)................................................................................26

*Cole v. City of Dearborn*,
   448 F. App'x 571 (6th Cir. 2011) ................................................34, 37

*Coleman v. Porch*,
   No. 3 09 0286, 2009 WL 792300 (M.D. Tenn. Mar. 25, 2009) ........27

*Coley v. Lucas Cnty., Ohio*,
   799 F.3d 530 (6th Cir. 2015) ......................................................35, 36

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
   648 F.3d 365 (6th Cir. 2011) .............................................................20

*Dowdy v. Shelby Cnty. Sheriff's Off.*,
   No. 220CV02448TLPTMP, 2021 WL 2324504 (W.D. Tenn. June
   7, 2021) ...............................................................................................26

*Eng. v. II Enterprises*,
   No. 19-12463, 2020 WL 32550 (E.D. Mich. Jan. 2, 2020) ..........19, 20

*Ernst v. Rising*,
   427 F.3d 351 (6th Cir. 2005) .............................................................13

*Essex v. Cnty. of Livingston*,
   518 F. App'x 351 (6th Cir. 2013) ......................................................20

*Fazica v. Jordan*,
   926 F.3d 283 (6th Cir. 2019) .............................................................34

*Foman v. Davis*,
   371 U.S. 178 (1962)................................................................20, 21, 38

*Garcia v. Dykstra*,
   260 F. App'x 887 (6th Cir. 2008) ................................................21, 26

*Gooden v. City of Memphis Police Dep't*,
   29 F. App'x 350 (6th Cir. 2002) ...........................................12, 24, 27

*Gordon v. England*,
   354 F. App'x 975 (6th Cir. 2009) ......................................................40

vi

*Gott v. Neuman & Esser USA, Inc.*,
  No. 1:19-CV-4, 2020 WL 7014222 (E.D. Tenn. Aug. 14, 2020)........................19

*Greer v. City of Highland Park*,
  884 F.3d 310 (6th Cir. 2018) ......................................................................32

*Hailey v. Washington*,
  No. 18-1164, 2018 WL 3954212 (6th Cir. July 12, 2018) ................................39

*Howse v. Hammond*,
  No. 1:19-CV-00027, 2019 WL 1491744 (M.D. Tenn. Apr. 3, 2019) ...............30

*Hutchinson v. City of Middletown, Ohio*,
  No. 1:20-CV-901, 2021 WL 602612 (S.D. Ohio Feb. 16, 2021).......................29

*Johnson v. Goodspeed*,
  No. 1:21-CV-186, 2022 WL 18587784 (W.D. Mich. Nov. 22, 2022)...............28

*Jones v. Mays*,
  No. 3:21-CV-00666, 2022 WL 3651964 (M.D. Tenn. Aug. 24,
  2022) ...............................................................................................................30

*Kalamazoo River Study Grp. v. Rockwell Int'l Corp.*,
  355 F.3d 574 (6th Cir. 2004) ......................................................................14

*Kentucky v. Graham*,
  473 U.S. 159 (1985)...................................................................................20

*Kingsley v. Hendrickson*,
  576 U.S. 389 (2015)...................................................................................34

*Kreipke v. Wayne State Univ.*,
  807 F.3d 768 (6th Cir. 2015) ......................................................................14

*Lanman v. Hinson*,
  529 F.3d 673 (6th Cir. 2008) ......................................................................36

*Lindsay v. Bogle*,
  92 F. App'x 165 (6th Cir. 2004)..........................................................22, 26, 28

*Lucas v. Chalk*,
  785 F. App'x 288 (6th Cir. 2019)..................................................................39

*Martin v. Overton*,
    391 F.3d 710 (6th Cir. 2004) ..................................................................24

*McCallum v. Gilless*,
    38 F. App'x 213 (6th Cir. 2002) .............................................................39

*McGowan v. Herbert*,
    No. 22-2033, 2023 WL 2945341 (6th Cir. Apr. 14, 2023)................................38

*Moore v. City of Harriman*,
    272 F.3d 769 (6th Cir. 2001) (en banc) ...................................................*passim*

*Mustin v. Guiller*,
    563 F. Supp. 3d 715 (N.D. Ohio 2021) ...................................................16, 18

*Nails v. Riggs*,
    No. 3:02-cv-317-H, 2003 WL 22326971 (W.D. Ky. Oct. 8, 2003) .............22, 29

*Newberry v. Silverman*,
    789 F.3d 636 (6th Cir. 2015) ...............................................................37, 40

*Nouri v. Cnty. of Oakland*,
    615 F. App'x 291 (6th Cir. 2015) ................................................................23

*Pershell v. Cook*,
    430 F. App'x 410 (6th Cir. 2011) ...............................................................34

*Pickett v. McCage*,
    No. 117CV01097JDBCGC, 2018 WL 2187057 (W.D. Tenn. May
    11, 2018) ......................................................................................................19

*Rajapakse v. Memphis Light, Gas & Water Div.*,
    No. 12-2807-JDT-DKV, 2013 WL 3803979 (W.D. Tenn. July 19,
    2013) ............................................................................................................18

*Rodgers v. Banks*,
    344 F.3d 587 (6th Cir. 2003) .................................................................*passim*

*Sapp v. Daviess Cnty. Det. Ctr.*,
    No. 4:18-CV-P153-JHM, 2018 WL 5892373 (W.D. Ky. Nov. 9,
    2018) ............................................................................................................30

*Schreiber v. Moe*,
    596 F.3d 323 (6th Cir. 2010) ...................................................................36

*Stewart v. IHT Ins. Agency Grp., LLC*,
    990 F.3d 455 (6th Cir. 2021) ..................................................................37

*Stewart v. IHT Ins. Agency Grp., LLC Welfare Benefits Plan*,
    142 S. Ct. 398 (2021)..............................................................................38

*Taylor v. Larson*,
    505 F. App'x 475 (6th Cir. 2012) ...........................................................15

*Taylor-Merideth v. Metro. Gov't of Nashville & Davidson Cnty.*,
    No. 3:16-CV-00612, 2017 WL 1164583 (M.D. Tenn. Mar. 28,
    2017) ........................................................................................................17

*Thomas v. Eby*,
    481 F.3d 434 (6th Cir. 2007) ...........................................................5, 13

*Thompson v. Poindexter*,
    No. 85-5264, 1986 WL 17207 (6th Cir. 1986)........................................15

*Tolliver v. Noble*,
    752 F. App'x 254 (6th Cir. 2018) .................................14, 15, 20, 22

*Trevino v. Kelly*,
    245 F. Supp. 3d 935 (E.D. Mich. 2017) .................................................18

*Tullis v. UMB Bank, N.A.*,
    515 F.3d 673 (6th Cir. 2008) ..................................................................21

*Turner v. Scott*,
    119 F.3d 425 (6th Cir. 1997) ..................................................................32

*United States v. Leprich*,
    169 F. App'x 926 (6th Cir. 2006) ...........................................................14

*United States v. Smotherman*,
    838 F.3d 736 (6th Cir. 2016) ....................................................................1

*Vaughn v. Judy*,
    No. 3:21-CV-00370, 2021 WL 2209354 (M.D. Tenn. June 1, 2021)...............30

*Wershe v. Combs*,
    763 F.3d 500 (6th Cir. 2014) ...............................................................13

*Williams v. Stinnett*,
    No. 3:20-CV-00098, 2020 WL 735775 (M.D. Tenn. Feb. 13, 2020) ..........25, 30

*Williams v. Troutt*,
    No. 3:19-CV-00641, 2019 WL 5448307 (M.D. Tenn. Oct. 24,
    2019) .................................................................................................30

*Young v. FedEx Emps. Credit Ass'n.*,
    No. 19-CV-2313, 2019 WL 5268564 (W.D. Tenn. Oct. 17, 2019) ..................17

*Young v. FedEx Emps. Credit Ass'n*,
    No. 19-CV-2313-TLP-TMP, 2019 WL 7669173 (W.D. Tenn. Sept.
    17, 2019) ............................................................................................17

**Statutes**

28 U.S.C. § 1915(e)(2)(B) ...........................................................................10

28 U.S.C. § 1915A .....................................................................................10

**Other Authorities**

Wright & Miller, 6A Fed. Prac. & Proc. § 1504 (3d ed.)......................................16

Wright & Miller, 6A Fed. Prac. & Proc. § 1507 (3d ed.)......................................16

Fed. R. App. P. 4(a)(1)(A) .............................................................................1

Fed. R. Civ. P. 15(d) ...................................................................................16

x

## STATEMENT OF JURISDICTION

Plaintiff-Appellant Devin McGuire filed this action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Tennessee. The District Court had jurisdiction over Mr. McGuire's claims under 28 U.S.C. § 1331. On October 31, 2022, the District Court dismissed the action. On November 23, 2022, Mr. McGuire filed a timely notice of appeal. *See* Fed. R. App. P. 4(a)(1)(A).[1] This Court has appellate jurisdiction under 28 U.S.C. § 1291.

---

[1] The Notice of Appeal was deposited in the facility mail system on November 23, 2022, and docketed on December 5, 2022. Notice of Appeal, R.9 at PageID #75. Under the "prison mailbox rule . . . a *pro se* prisoner's notice of appeal is deemed 'filed at the time [*pro se* prisoner] delivered it to the prison authorities for forwarding to the court clerk.'" *United States v. Smotherman*, 838 F.3d 736, 737 (6th Cir. 2016) (quoting *Houston v. Lack*, 487 U.S. 266, 276 (1988)).

1

**INTRODUCTION**

Soon after Devin McGuire entered Loudon County Jail, three officers brutally assaulted him, knocking out his teeth and cracking his ribs. They "strap[p]ed [him] in a chair[] and proce[e]ded to beat [him] with handcuffs," "hit [him] multiple times" in the stomach, "pounded on [his] ribs," and left him in a padded room without water after "strip[p]ing [him] naked." First Filing, R.2, PageID #11. Despite fearing for his safety—the officers had threatened him with further violence if he "sa[id] anything"—Mr. McGuire filed a *pro se* complaint. *Id*. Nine days later, another officer assaulted Mr. McGuire, putting him "in a choke hold and pop[ping] [his] arm out of place." Second Filing, R.4, PageID #18. Mr. McGuire sent a follow-up letter to the district court detailing the second assault and later submitted two additional filings summarizing the assaults and imploring the court for legal assistance and updates on his case.

The district court wrongly construed Mr. McGuire's final filing as a request for leave to amend his complaint, granted the request, and decided that the final filing superseded all prior filings. Because this filing only summarized his prior filings, the court's decision eliminated from consideration the bulk of Mr. McGuire's factual allegations about the assaults. Limiting its review to this abbreviated final filing, the district court then dismissed the action with prejudice at the earliest possible stage of litigation—before defendants were even served—for two reasons.

First, it faulted Mr. McGuire for checking "official capacity" boxes on a misleading complaint form even though he clearly stated individual capacity claims. But capacity is a notoriously tricky concept even for experienced practitioners, let alone for *pro se* litigants without legal training. In fact, this Court established a "course of proceedings" test to help courts make capacity determinations in just this scenario. Instead of applying this test and properly treating the suit as raising individual capacity claims, the district court dismissed it out of hand with no analysis.

Second, the district court determined that Mr. McGuire's allegations were too "generalized" and "not direct[ed] against any named Defendant." Opinion, R.7, PageID #70. Mr. McGuire's excruciatingly detailed pleadings contradict this perplexing holding. Taken together, his filings plainly allege the personal involvement of all four defendants: as to the first assault, Mr. McGuire dutifully identifies by name the officer that held his head back while other officers beat him, the officer that punched him in the stomach, and the officer that broke his ribs. Likewise, his description of the second assault identifies by name the officer that put him, shackled and handcuffed, into a chokehold and dislocated his arm. Even looking at the final filing in isolation, as the district court erroneously did, Mr. McGuire identifies the perpetrator of the second assault and his precise conduct, and then describes the first assault in a way that makes clear who committed it.

The district court was wrong on both counts. What's more, it did not give Mr. McGuire—a *pro se* litigant—even one chance to fix the perceived errors, as Sixth Circuit case law requires in this circumstance. Had he been given the opportunity, Mr. McGuire could easily have filed an amended complaint explicitly naming defendants in their individual capacities and providing additional details. Instead, the district court dismissed with prejudice, foreclosing Mr. McGuire's avenue to relief for the two vicious assaults he suffered. This Court should reverse.

## STATEMENT OF ISSUES

The issues raised on appeal are:

1. Whether a *pro se* plaintiff's filing—intended to check on the status of the case and summarize the facts already set forth in prior pleadings—should replace those prior pleadings and abrogate the more detailed allegations in them.

2. Whether the course of proceedings test must be applied to determine if defendants are sued in their official or individual capacities where a *pro se* plaintiff either (a) files several documents with conflicting statements regarding capacity on misleading complaint forms; or (b) checks an official capacity box on a single misleading complaint form but otherwise includes indicators of an individual capacity suit on the face of the complaint.

3. Whether the course of proceedings test indicates an individual capacity suit where (a) the complaint includes clear signs of individual capacity—such as allegations of abuse by specific officers and requests for damages; and (b) defendants cannot be prejudiced by such a determination because they were neither served nor required to contemplate a defense.

4. Whether a *pro se* plaintiff adequately alleges personal involvement where he identifies defendants by name and explains how they assaulted him.

5. Whether a *pro se* plaintiff should be given an opportunity to cure plainly curable defects in a complaint.

4

## STATEMENT OF THE CASE

### I. Factual Background[2]

#### A. Mr. McGuire is assaulted by Officers Brockwell, Ward, and Myers just hours after entering Loudon County Jail.

Hours after Devin McGuire entered Loudon County Jail, Officers Brockwell, Ward, and Myers assaulted him, knocking out his teeth and cracking his ribs. First Filing, R.2, PageID #10-11; Fourth Filing, R.6, PageID #65. Mr. McGuire had been warned of this beating: the officers transporting him to the jail told him that they would "beat him like the n***** [he was] as soon as they got [him] back to the police station." Third Filing, R.5, PageID #51. Their ire was based on accusations that Mr. McGuire had shot at police the previous day. *Id.*

At the jail, Brockwell, Ward, and Myers carried out the assault while escorting Mr. McGuire—shackled and handcuffed—to his holding cell. First Filing, R.2, PageID #11. On the way, they snatched the shackles out from under his feet. *Id.*; Fourth Filing, R.6, PageID #65. Unable to break his fall due to the restraints, Mr. McGuire fell to the floor, slamming his face and cracking his tooth. First Filing, R.2, PageID #11; Fourth Filing, R.6, PageID #65. The officers then strapped Mr.

---

[2] At this stage, the Court must "accept all well-pleaded factual allegations as true." *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Mr. McGuire's factual allegations span four filings, *see* First Filing, R.2; Second Filing, R.4; Third Filing, R.5; Fourth Filing, R.6, that together constitute the operative complaint, *see infra* Section I. The district court improperly considered only the fourth filing. *Id.*

McGuire to a chair in his cell and beat his face with a pair of handcuffs, knocking out two more of his teeth. First Filing, R.2, PageID #11; Fourth Filing, R.6, PageID #65. Myers placed his thumbs in pressure points under Mr. McGuire's jaw and held his head back as he sat strapped to the chair. First Filing, R.2, PageID #11; Fourth Filing, R.6, PageID #65. As Myers restrained Mr. McGuire, Ward repeatedly hit him in his sternum and stomach, knocking the wind out of him. First Filing, R.2, PageID #11; Fourth Filing, R.6, PageID #65. Meanwhile, Brockwell pounded and cracked Mr. McGuire's ribs. First Filing, R.2, PageID #11; Fourth Filing, R.6, PageID #65.

After this beating, the officers stripped Mr. McGuire naked, tased him, and left him in a padded cell with no water. First Filing, R.2, PageID #11; Second Filing, R.4, PageID #19; Third Filing, R.5, PageID #51; Fourth Filing, R.6, PageID #58. Several hours later, they put him back in the chair in a yellow paper gown and said, "I bet you won't run from the police anymore." First Filing, R.2, PageID #11. They threatened more violence if he "sa[id] anything," *id.*, and asked if he wanted his other teeth "busted out the same," Second Filing, R.4, PageID #19. They mocked him for months after the assault. *Id.*

After the assault, Mr. McGuire repeatedly sought medical attention for his broken teeth and ribs. First Filing, R.2, PageID #12-15. Though he received some dental treatment, he continued to experience pain and implored the medical staff to

6

pull his teeth. *Id.* at PageID #15. He received only ibuprofen for his broken ribs. Fourth Filing, R.6, PageID #58.

### B. Mr. McGuire is assaulted by Captain Keener approximately nine days after sending in his complaint about the first assault.

The beating and the threats made Mr. McGuire fearful. In his first filing, he noted that he was "scar[e]d to write this." First Filing, R.2, PageID #11. And in subsequent filings, he explained that he had "feared for [his] life" before filing suit because he thought "they would try to hurt or do something to [him]" if he "sent mail out" or "served any papers to them." Third Filing, R.5, PageID #52. He filed suit anyway, he said, "to make [himself] feel better" and "fac[e] [his] fears." *Id*.

His fear of retribution was warranted. Approximately nine days after sending in his first filing, Mr. McGuire was brutally assaulted again—this time by Captain Keener. *See* First Filing, R.2, PageID #16 (first filing signed on April 19); Fourth Filing, R.6, PageID #65 (explaining Keener assaulted him on April 28). He was asleep in his cell when Keener stripped him, took his clothes, ordered him to put his hands on the wall, and shackled and handcuffed him. Second Filing, R.4, PageID #18; Third Filing, R.5, PageID #52; Fourth Filing, R.6, PageID #65. Keener took Mr. McGuire to the padded cell and kicked the back of his knee, knocking him face down on the ground. Second Filing, R.4, PageID #18; Fourth Filing, R.6, PageID #65. Once Mr. McGuire was on the ground, Keener put his arm around Mr. McGuire's neck and choked him. Second Filing, R.4, PageID #18; Fourth Filing,

7

R.6, PageID #65. At the same time, he yanked Mr. McGuire's arm upward until it dislocated. Second Filing, R.4, PageID #18; Fourth Filing, R.6, PageID #65. While Keener had Mr. McGuire in a chokehold, he called Mr. McGuire a "dirty bitch n*****" three times. Second Filing, R.4, PageID #18; Third Filing, R.5, PageID #49; Fourth Filing, R.6, PageID #65.

After the assault, Mr. McGuire's arm was swollen, purple, and hanging limp at his side. Second Filing, R.4, PageID #18; Third Filing, R.5, PageID #50; Fourth Filing, R.6, PageID #65. He alerted officers on duty about his injured arm but was told that he could not see a nurse until the next day. Second Filing, R.4, PageID #18; Third Filing, R.5, PageID #50; Fourth Filing, R.6, PageID #65. Unable to stand the pain any longer, he popped his arm back into place himself as the officers watched. Second Filing, R.4, PageID #18; Third Filing, R.5, PageID #52; Fourth Filing, R.6, PageID #65.

To this day, Mr. McGuire suffers migraines and experiences night terrors. Second Filing, R.4, PageID #19, 21.

## II. Procedural History

After the first assault, Mr. McGuire brought suit under 42 U.S.C. § 1983 against Myers, Ward, and Brockwell, alleging excessive force. First Filing, R.2. Because he was a *pro se* litigant, Mr. McGuire used a complaint form for civil rights violations to detail his claims. *Id*. On this form, he did not indicate—and the form

did not ask—whether he was suing defendants in their individual or official capacities. After the second assault, Mr. McGuire filed three additional documents adding Keener to the suit, providing more details about his claims, requesting legal support, and checking on the status of his case. Second Filing, R.4; Third Filing, R.5; Fourth Filing, R.6.

Mr. McGuire's second filing was a letter while his third and fourth filings utilized complaint forms. Unlike the form used in the first filing, however, the later forms asked him to specify the defendants' "job or title" and to check boxes indicating whether he was "bringing this complaint against [the defendants] in their individual or official capacity, or both." Third Filing, R.5, PageID #39-40; Fourth Filing, R.6, PageID #55-56. In these filings, Mr. McGuire checked the box next to the words "official capacity" as to the officers who committed the first assault. Third Filing R.5, PageID #39-40; Fourth Filing, R.6, PageID #55-56. With respect to Keener, he checked the "individual capacity" box in his third filing and the "official capacity" box in his fourth filing. Third Filing, R.5, PageID #39; Fourth Filing, R.6, PageID #55.

Mr. McGuire's fourth filing included a one page "short summary" of facts and claims that he detailed in previous filings and explained that he "wish[ed] to check on [his] progress on [his] case." Fourth Filing, R.6, PageID #65. The district court construed this fourth filing as a "request for leave to amend his complaint," granted

9

the request, and held that it superseded all prior filings. Opinion, R.7, PageID #67 n.1.

The district court then screened Mr. McGuire's complaint based only on the contents of the fourth filing and dismissed it for two reasons. First, it concluded that Mr. McGuire sued the officers only in their official capacities. *Id.* at PageID #69. Accordingly, it treated his claims as "equivalent to suit against Loudon County itself," and, after determining that he could not establish municipal liability, dismissed his case. *Id.* at PageID #70. Second, the district court—still examining only the "short summary" from the fourth filing—opined that Mr. McGuire made only "generalized allegations" not "directed against any named defendant." *Id.* It concluded that this "alternative ground" also "support[ed] dismissal at the screening stage." *Id*. at PageID #71.

Because the district court dismissed Mr. McGuire's action at the screening stage per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, *id.* at PageID #68, the case was dismissed before the defendants were served. Mr. McGuire appealed, at which point undersigned counsel began representing him *pro bono*. [3]

---

[3] For the sake of clarity, we note the case caption lists only Brockwell, Ward, and Keener and, accordingly, the cover page of this brief lists only these three defendants. However, Myers is also a defendant in this case as he was integrally involved in the first assault and listed on Mr. McGuire's first, second, and third filings. Myers is not listed in the case caption only because the district court improperly construed Mr. McGuire's fourth filing as the operative complaint. As explained below, that was error.

## SUMMARY OF ARGUMENT

I. The district court laid the groundwork for a cursory dismissal of Mr. McGuire's case by construing his final filing—intended to check on the status of his case and summarize the facts he carefully detailed in prior filings—as a request for leave to amend his complaint; it then granted this non-existent request, eliminating numerous facts that indicated an individual capacity suit as well as personal involvement. This was error.

II. Relying only on the fourth filing, the district court erred again in concluding that Mr. McGuire sued defendants solely in their official capacities. When filings are ambiguous about capacity, this Court applies a course of proceedings test, which examines whether defendants have adequate notice of the capacity in which they face liability. *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc). Mr. McGuire's filings are ambiguous: at different points in the proceedings, he checked different capacity boxes on different *pro se* complaint forms. Even looking just at the fourth filing, where he only checked official capacity boxes, the substance of the filing unequivocally points to an individual capacity suit. Faced with precisely this scenario, courts in this circuit routinely apply the course of proceedings test. The district court did not.

If the district court had applied the course of proceedings test—to all four filings or even just the fourth filing—it would have seen that Mr. McGuire sued

11

defendants in their individual capacities. Mr. McGuire alleged two violent assaults by rogue officers and sought punitive damages. Under this Court's caselaw, these are unambiguous indications that he was bringing individual capacity claims. Moreover, this Court has been clear that resolving capacity issues during "the early stages of litigation" "ensures fairness . . . to defendants." *Moore*, 272 F.3d at 772 n.1. Here, Mr. McGuire's case was dismissed at the earliest possible stage of litigation, so defendants "did not suffer any prejudice." *Gooden v. City of Memphis Police Dep't*, 29 F. App'x 350, 353 (6th Cir. 2002). Mr. McGuire brought individual capacity claims and the district court was wrong to act otherwise.

III. The district court erred for a third time when it determined that Mr. McGuire's fourth filing asserted only "generalized allegations." Opinion, R.7, PageID #70. That filing mentions Keener *by name* and describes his precise involvement in the second assault. It also includes the names of two other defendants on the second page of the filing under the header "The Defendants," Fourth Filing, R.6, PageID #55-56, and then on a later page summarizes the first assault, *id.* at 65. To the extent the final filing created any uncertainty, a quick glance at Mr. McGuire's previous three filings would have dispelled it. In his first, second, and third filings, Mr. McGuire named each defendant and explained their precise roles in the two assaults. The district court was flatly wrong to find otherwise.

12

IV. In sum, the district court restricted the factual record in a way that undermined Mr. McGuire's claims from the get-go, failed to apply this Court's long-standing approach to capacity, and mischaracterized detailed allegations as mere generalities. But *even if* this Court does not find error on any of those grounds, it should nonetheless reverse and require the district court to give Mr. McGuire an opportunity to amend. Where, as here, deficiencies are easily curable, a litigant must be given at least "one chance to amend the complaint." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644-45 (6th Cir. 2003).

## STANDARD OF REVIEW

This Court reviews *de novo* a dismissal under 28 U.S.C. §§ 1915(e) and 1915A. *Wershe v. Combs*, 763 F.3d 500, 505 (6th Cir. 2014). Here, the district court's decision to construe the final filing as a request for leave to amend, as well as its holdings on capacity and personal involvement, are all subject to *de novo* review. The district court's final decision—to dismiss with prejudice and without leave to amend—is reviewed for abuse of discretion. *Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005).

In conducting its review, this Court "construe[s] the complaint in the light most favorable to the plaintiff" and "accept[s] all well-pleaded factual allegations as true." *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (quotation marks and citation omitted). It also liberally construes *pro se* complaints, *Black v. Parke*, 4 F.3d

442, 448 (6th Cir. 1993), and "scrutinize[s] with special care" dismissals of "complaints under the civil rights statutes." *Moore*, 272 F.3d at 771.

## ARGUMENT

### I.    Mr. McGuire's fourth filing supplemented—rather than superseded—his previous filings.

The district court facilitated its cursory dismissal of Mr. McGuire's civil rights claims by ignoring his first three filings. It did so by "constru[ing]" his fourth filing "as a request for leave to amend his complaint," granting this non-existent "request," and considering only the documents comprising that filing. Opinion, R.7, PageID #67 n.1. That was error.[4]

This Court has chastised lower courts for making the same mistake. In *Tolliver v. Noble*, for instance, the plaintiff's initial filing "articulate[d] the general basis" of his claim, his next three filings "all elaborate[d] on his concerns," and his fifth filing

---

[4] It is worth emphasizing that this decision is subject to *de novo* review by this Court. While decisions granting or denying leave to amend are typically reviewed for abuse of discretion, *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 781 (6th Cir. 2015), the "decision to construe" a filing as a request to amend is the type of "interpretation and application" of the Federal Rules of Civil Procedure that requires *de novo* review. *Kalamazoo River Study Grp. v. Rockwell Int'l Corp.*, 355 F.3d 574, 583-84 (6th Cir. 2004); *see also United States v. Leprich*, 169 F. App'x 926, 931 (6th Cir. 2006) (reviewing *de novo* where "the district court's characterization" of a motion as arising under a particular rule was "an interpretation and application of the Federal Rules of Civil Procedure"). Here, the district court explained it would "construe[]" the fourth filing "as a request for leave to amend [the] complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure," Opinion, R.7, PageID #67 n.1—a decision subject to *de novo* review.

"reiterated his concerns." 752 F. App'x 254, 266-67 (6th Cir. 2018). This Court rightly noted that the final filing, which the district court had considered in isolation, was "understandably limited in detail due to the facts contained in [the plaintiff's] previous filings." *Id*. at 268. The *Tolliver* Court went on to explain that "district courts must be more cognizant of the context" of a *pro se* plaintiff's filings and noted that the district court's "refusal to examine the plaintiff's allegations inappropriately impose[d] a rigid, rather than lenient, standard." *Id.*; *see also Thompson v. Poindexter*, No. 85-5264, 1986 WL 17207, at *1 (6th Cir. 1986) (noting that "additional documents filed by *pro se* plaintiffs are usually considered part of the pleadings"); *Taylor v. Larson*, 505 F. App'x 475, 477-78 (6th Cir. 2012) (considering *pro se* plaintiff's "elaboration on the factual allegations of the original complaint," even though the "elaborations" were included in amended complaint filed after judgment was entered). Properly considering the full context led this Court to the conclusion that the plaintiff "intended" the final filing "to be the last in a line of related filings," and therefore to "supplement[] his original." *Tolliver*, 752 F. App'x at 267-68.

So too here: the district court refused to consider "the context" of Mr. McGuire's filings and "inappropriately impose[d] a rigid, rather than lenient, standard" by construing his fourth filing as a request for leave to amend. *Tolliver*, 752 F. App'x at 268. A contextual view of the record shows that Mr. McGuire never

15

amended his complaint. His second filing supplemented the first because it "deal[t] with events subsequent" to the original filing. Wright & Miller, 6A Fed. Prac. & Proc. § 1504 (3d ed.); *see also* Fed. R. Civ. P. 15(d). That filing added a new defendant to the action—namely Keener, for an assault that occurred nine days after the first filing—and did not supersede the initial complaint. *See* Wright & Miller, 6A Fed. Prac. & Proc. § 1507 (3d ed.) (explaining a supplemental pleading may "bring in additional parties plaintiff or defendant"). His third filing included a pared-down summary of facts that operated, in part, as a plea for help as he had "no way of knowing how to continue" his suit. Third Filing, R.5, PageID #49-52. Indeed, that filing expressly noted that he was "writing a quick summary of what happen [sic] in case you need to know agin [sic]." *Id*. at PageID #51. And his fourth filing, which labeled its factual allegations a "short summary," was largely intended "to check [the] progress on [his] case." Fourth Filing, R.6, PageID #65. These final two filings were, in other words, "continuations of the earlier pleadings" rather than replacements. 6A Wright & Miller, Fed. Prac. & Proc. § 1504.

Faced with these filings, the district court had at least two options that would have afforded Mr. McGuire the "careful protection" due *pro se* litigants. *Brown v. Matauszak*, 415 F. App'x 608, 616 (6th Cir. 2011). One option was to consider Mr. McGuire's second, third, and fourth filings to be supplemental pleadings. Many courts have done just that. *See, e.g.*, *Mustin v. Guiller*, 563 F. Supp. 3d 715, 721-22

16

(N.D. Ohio 2021) (treating a filing as supplemental because it did "not appear to be a fulsome complaint, but rather, a compilation of additional information that [the plaintiff] sought to add to his original complaint"); *Taylor-Merideth v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:16-cv-00612, 2017 WL 1164583, at *1 (M.D. Tenn. Mar. 28, 2017) (construing two filings together because it was "apparent" that the plaintiff "likely did not understand that her Amended Complaint would supersede the original Complaint"); *Young v. FedEx Emps. Credit Ass'n*, No. 19-CV-2313-TLP-TMP, 2019 WL 7669173, at *3 (W.D. Tenn. Sept. 17, 2019), *report and recommendation adopted sub nom. Young v. FedEx Emps. Credit Ass'n.*, No. 19-cv-2313, 2019 WL 5268564 (W.D. Tenn. Oct. 17, 2019) (treating as supplemental an "amended complaint" that left out a defendant).

This approach makes good sense here as Mr. McGuire's fourth filing labeled its factual section a "short summary." Fourth Filing, R.6, PageID #65. That label, as well as the document's brevity, both indicate that he did not intend for it to supplant his earlier filings. Moreover, in the fourth filing, Mr. McGuire does not name Brockwell, Ward, and Myers in his description of the assault, despite dutifully doing so in previous filings. *Compare* Fourth Filing, R.6, PageID #65, *with* First Filing, R.2, PageID #11. Likewise, Mr. McGuire's final filing includes only a short description of Keener's assault and omits key details included in previous filings. *Compare* Fourth Filing, R.6, PageID #65, *with* Second Filing, R.4, PageID #18. The

17

language of the fourth filing also demonstrates that Mr. McGuire merely intended to follow up on previous filings: He asks for "help" with "legal services" and says he is writing to "check progress on [his] case." Fourth Filing, R.6, PageID #65. Even a cursory review of the fourth filing thus reveals that it is not a "fulsome complaint." *Mustin*, 563 F. Supp. 3d at 722. Rather, it is a plea for a case update and legal assistance. It should not have been treated as a superseding complaint.

Indeed, even when a filing is explicitly labeled an "amended complaint," courts in this circuit consider whether the "plaintiff intended [an] amended complaint[] to be in actuality supplemental." *Trevino v. Kelly*, 245 F. Supp. 3d 935, 943 (E.D. Mich. 2017); *see also Brent v. Hyundai Cap. Am.*, No. 14-2600-STA-DKV, 2014 WL 7335415, at *1 n.1 (W.D. Tenn. Dec. 19, 2014) (construing an "amended complaint as a supplement to the original complaint" because the "original complaint contains more factual details underlying his claims"); *Rajapakse v. Memphis Light, Gas & Water Div.*, No. 12-2807-JDT-DKV, 2013 WL 3803979, at *7 (W.D. Tenn. July 19, 2013) (treating as supplemental a filing that explicitly used the word "Amend" in its caption); *Brancho v. Alexander*, No. 5:10CV1160, 2010 WL 4054395, at *1 (N.D. Ohio Oct. 14, 2010) (treating as supplemental an "Amended" complaint that seeks to add defendants and additional claims). Of course, here, Mr. McGuire did not label his filing an amended complaint; in fact, he did not mention the word amended or amendment even once in the fourth filing. In

18

light of his *pro se* status and the fourth filing's clear supplemental intent, the district court erred in construing it as a request for leave to amend.

A second option was for the district court to read Mr. McGuire's fourth filing to incorporate his earlier filings by reference. Where, as here, a *pro se* plaintiff has "stated all of his factual and legal claims" in prior filings and the plaintiff "did not intend to completely supersede his prior filing," later filings may "incorporate by reference the initial complaint." *Eng. v. II Enterprises*, No. 19-12463, 2020 WL 32550, at *3 (E.D. Mich. Jan. 2, 2020); *see also Pickett v. McCage,* No. 117CV01097JDBCGC, 2018 WL 2187057, at *1 n.1 (W.D. Tenn. May 11, 2018) (finding *pro se* plaintiff who intended to add additional facts to his original complaint sufficiently incorporated by reference the allegations of his original complaint). Here, in labeling the fact section of his fourth filing a "short summary," Mr. McGuire indicated that he wished to incorporate his prior filings by reference. *See Gott v. Neuman & Esser USA, Inc.*, No. 1:19-CV-4, 2020 WL 7014222, at *5 (E.D. Tenn. Aug. 14, 2020) (citation omitted) (defining a "summary" as "a brief account that states the main points of a larger body of information"). A *pro se* plaintiff's complaint that purports only to be a short summary should not be construed to supplant all other precise details provided to the court in previous filings. Rather, "[i]n line with . . . the Sixth Circuit's mandate to liberally construe *pro se* complaints," Mr. McGuire's fourth filing should have been seen to

19

"incorporate[] by reference" his initial filings. *See Eng. v. II Enterprises*, No. 19-12463 at *3.

Either of these options would have complied with this Court's mandate to "be more cognizant of the context" of a *pro se* plaintiff's filings and to treat them with "lenien[cy]." *Tolliver*, 752 F. App'x at 268. Yet the district court took neither approach. Instead, it decided to ignore all the information presented in Mr. McGuire's first three filings, and improperly transformed *pro se* pleading into a "game of skill." *Foman v. Davis*, 371 U.S. 178, 181-82 (1962).

## II.  Mr. McGuire sued defendants in their individual, not solely official, capacities.

Civil rights plaintiffs can sue local officers in their official or individual capacities. Whereas an official capacity suit operates against the municipality, an individual capacity suit operates against the officer himself. The distinction between personal and official capacity suits is as puzzling as it is consequential, and it "continues to confuse lawyers and confound lower courts." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Essex v. Cnty. of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013) ("This area of the law has confused the parties involved in this case."); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011) (construing allegations as raising individual capacity claims even though plaintiffs' lawyers "characterize their claims as being asserted against Defendants in their 'official capacities'").

20

Recognizing the doctrine's propensity to confuse, this Court has long held that an unclear statement of capacity—or a failure to specify capacity altogether—is not fatal. Instead, when a capacity statement is ambiguous or absent, this Court looks to "the course of the proceedings" and permits an individual capacity suit to proceed as long as "the defendant received sufficient notice" of an individual capacity claim. *Moore*, 272 F.3d at 772. By focusing on notice rather than magic words, the course of proceedings test embodies this Court's refusal to "elevate form over substance." *Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 680-81 (6th Cir. 2008) (citing *Moore*'s course of proceedings test as an example of this principle). And it enacts the Supreme Court's instruction that "the purpose of pleading is to facilitate a proper decision on the merits" rather than to commence "a game of skill in which one misstep *by counsel* may be decisive to the outcome." *Foman*, 371 U.S. at 181-82 (emphasis added).

One misstep by a *pro se* plaintiff should be even less decisive. The course of proceedings test—frequently applied in counseled cases, *see, e.g.*, *Moore*, 272 F.3d 769; *Rodgers v. Banks*, 344 F.3d 587 (6th Cir. 2003); *Garcia v. Dykstra*, 260 F. App'x 887 (6th Cir. 2008)—carries special importance in *pro se* cases. "*Pro se* litigants require careful protection" particularly where "enforcing [technical] requirements might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits." *Brown*, 415 F. App'x at 616. Thus, where "doubt persists" about

21

whether to construe a *pro se* complaint "against the defendants individually, this doubt should be resolved in [the *pro se* plaintiff's] favor." *Lindsay v. Bogle*, 92 F. App'x 165, 169 (6th Cir. 2004); *see also Nails v. Riggs*, No. 3:02-cv-317-H, 2003 WL 22326971, at *4 (W.D. Ky. Oct. 8, 2003) ("A *pro se* plaintiff without legal training should not necessarily be expected to distinguish between suing a public official in his individual or official capacity."). These principles take on even more importance in civil rights cases like this one because "dismissals of complaints under the civil rights statutes are scrutinized with special care." *Moore*, 272 F.3d at 771 (cleaned up).

The district court disregarded all this law and, in one sentence, determined that Mr. McGuire's *pro se* complaint alleged only official capacity claims. It thereby foreclosed his civil rights suit at the earliest stage of litigation—so early, in fact, that defendants had not even been served and thus suffered no prejudice from any ambiguity. That was wrong. Under any conception of the complaint—whether it properly includes the full "line of related filings," *Tolliver*, 752 F. App'x at 267, or just the final filing—the district court should have applied the course of proceedings test and held that Mr. McGuire brought individual capacity claims.

22

**A. The course of proceedings test, applied to all of Mr. McGuire's pleadings, shows an individual capacity suit.**

### *i.  The course of proceedings test applies.*

The district court's failure to apply the course of proceedings test was a mistake. The test applies where, as here, it "is not clear" whether a plaintiff seeks to hold defendants liable in their official or individual capacities. *Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 295 (6th Cir. 2015) (quotation marks omitted); *see also Moore,* 272 F.3d at 773 (applying the course of proceedings test where a plaintiff "fails to affirmatively plead capacity"); *Rodgers*, 344 F.3d at 594-95 (applying the course of proceedings test where the complaint stated "that Defendant was being sued in her official capacity" but was otherwise ambiguous as to capacity).

Mr. McGuire was "not clear" about capacity: on some forms he failed to mention capacity altogether, and on others he checked both official and individual capacity boxes. In his first and second filings, Mr. McGuire did not mention capacity. *See generally* First Filing, R.2; Second Filing, R.4. It was in his third filing that Mr. McGuire addressed capacity for the first time. Third Filing, R.5, PageID #39-40. This filing contained a form complaint, distinct from the one used in the first and second filings, that asked about capacity. On this form, Mr. McGuire checked the official capacity boxes for three defendants, and the individual capacity box for one defendant—Keener. *Id.* It was not until the fourth filing that Mr. McGuire

23

checked the official capacity boxes for all defendants. Fourth Filing, R.6, PageID #55-56.

In analogous circumstances, this Court has applied the course of proceedings test. In *Gooden*, for instance, this Court applied the test to a complaint stating just one word, "both," on a form that asked about capacity. *Gooden*, 29 F. App'x at 352. While Mr. McGuire said more than one word—he filed multiple documents with conflicting statements (and silences) regarding capacity—the substantive effect of his pleadings is the same as in *Gooden*. That is, his pleadings reflected an ambiguity that required application of the course of proceedings test. *See also Briggs v. Hogan*, No. 21-5581, 2022 WL 985825, at *2 (6th Cir. Apr. 1, 2022) (applying the course of proceedings test where the plaintiff did "not clearly state" capacity); *Rodgers*, 344 F.3d at 594-95 (applying the course of proceedings test where the complaint stated "that Defendant was being sued in her official capacity" but was otherwise ambiguous as to capacity).

"Substance, rather than labels, should control" *pro se* proceedings. *Martin v. Overton,* 391 F.3d 710, 714 (6th Cir. 2004). Yet, the district court elevated labels over substance when it failed to apply the course of proceedings test to Mr. McGuire's ambiguous *pro se* filings.

24

### ii.   *The course of proceedings test shows an individual capacity suit.*

The course of proceedings test is primarily concerned with whether there is "sufficient notice to the officers that they [a]re being sued as individuals." *Moore*, 272 F.3d at 773. It thus requires courts to consider such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, the nature of any defenses raised, and whether subsequent pleadings may have put the defendant on notice. *Id.* at 772 & n.1. Here, all factors point the same way: toward an individual capacity suit.

First, the nature of Mr. McGuire's claims strongly suggests an individual capacity suit. He says little, if anything, to implicate Loudon County itself in the assaults. Instead, he alleges that the individual defendants brutally assaulted him and called him racial slurs: he explains how Brockwell, Ward, and Myers strapped him to a chair and beat his face with handcuffs, knocked out two of his teeth, and broke several of his ribs, First Filing, R.2, PageID #10-11, and how Keener dislocated his arm and called him a "dirty bitch n*****," Second Filing, R.4, PageID #18; Fourth Filing, R.6, PageID #65. In providing these details, Mr. McGuire articulates specific, legally cognizable excessive force claims, which implicate defendants in their individual, rather than official capacities. *See Williams v. Stinnett,* No. 3:20-CV-00098, 2020 WL 735775, at *2 (M.D. Tenn. Feb. 13, 2020) (finding individual capacity suit where a plaintiff alleged that defendants "personally used excessive

25

force"); *Dowdy v. Shelby Cnty. Sheriff's Off.*, No. 220CV02448TLPTMP, 2021 WL 2324504, at \*3 n.4 (W.D. Tenn. June 7, 2021) (explaining that allegations of "unreasonable and excessive force" show that the plaintiff was suing the defendants "in their individual capacities").

Next, Mr. McGuire's consistent requests for damages likewise indicate individual capacity claims. First Filing, R.2, PageID #16; Second Filing, R.4, PageID #21; Third Filing, R.5, PageID #42; Fourth Filing, R.6, PageID #58. *Moore* itself established that a request for damages can help provide "sufficient notice" of individual capacity claims. *Moore*, 272 F.3d at 773. And because "a municipality is immune from punitive damages under 42 U.S.C. § 1983," *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), Mr. McGuire's request for punitive damages is especially strong evidence of an individual capacity suit here, *see* Fourth Filing, R.6, PageID #58. Even if his request for damages is not enough on its own, a broader "demand for money damages, along with something more" can "demonstrate[] that [municipal defendants] were aware of potential liability in their individual capacities." *Garcia*, 260 F. App'x at 895; *see also Lindsay*, 92 F. App'x at 169 (construing a complaint as "one against the defendants individually" where the plaintiff broadly "requested monetary relief" and municipal "defendants raised a qualified immunity defense"); *Briggs v. Hogan*, No. 21-5581, 2022 WL 985825, at \*2 (6th Cir. Apr. 1, 2022) (finding individual capacity claims where the plaintiff

26

requested "compensatory and punitive damages"). As just detailed, Mr. McGuire's demand for money damages is accompanied by that "something more" because the nature of his claims so clearly shows an individual capacity suit.

Because of the early-stage dismissal, the final two factors—the nature of defenses raised and the content of subsequent pleadings—may not appear strictly applicable. In fact, these factors carry special weight given the early dismissal. The *Moore* Court explained that "timing" is important because resolving the capacity issue during the "early stages of litigation . . . ensures fairness to defendants." *Moore*, 272 F.3d at 772 n.1. Here, of course, Mr. McGuire's case was dismissed at the earliest possible stage of litigation—at screening, before defendants were even served. Screening stage dismissals are so "early in the 'course of proceedings'" that defendants do "not suffer any prejudice" from a determination that the suit must proceed against them in their individual capacities. *Gooden*, 29 F. App'x at 353. Thus, the course of proceedings test's primary concern—ensuring that defendants have notice of their exposure so as to avoid prejudicing them—is satisfied here.

The four factors in the course of proceedings test leave no doubt that Mr. McGuire's claims are against the officers in their individual capacities.[5] But if any

---

[5] At times, courts have gone beyond these four factors and considered whether plaintiffs referred to defendants by their names (to indicate individual capacity) or titles (official). *See, e.g.*, *Coleman v. Porch*, No. 3 09 0286, 2009 WL 792300, at *2 (M.D. Tenn. Mar. 25, 2009). Mr. McGuire refers to the defendants inconsistently

"doubt persists," that doubt "should be resolved in favor [of Mr. McGuire as] a *pro se* plaintiff." *Lindsay*, 92 F. App'x at 169.

**B. The course of proceedings test, applied to Mr. McGuire's fourth pleading, shows an individual capacity suit.**

Even if the district court was correct to disregard Mr. McGuire's first three filings, it should still have applied the course of proceedings test. Applying the test to the fourth filing alone makes clear that Mr. McGuire sued the defendants in their individual capacities.

### *i. The course of proceedings test applies to the fourth filing.*

This Court applies the course of proceedings test even where complaints "specifically state[]" a defendant is being sued in her "official capacity" as long as other aspects of the complaint cast doubt on that assertion. *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003). In *Rodgers*, this Court acknowledged that the counseled plaintiff "includ[ed] the statement that Defendant was being sued in her official capacity," but applied the course of proceedings test anyway because the

---

throughout his filings. At times he refers to them by their last names, especially where the form does not prompt him to state their positions. *See, e.g.*, First Filing, R.2, PageID #10-11. And to the extent his occasional use of titles raises any doubt about the capacity in which he sued them, such doubt must be resolved in his favor, as a *pro se* plaintiff. *See Lindsay*, 92 F. App'x at 169 (citation omitted). It is also worth noting that incarcerated people may use titles for self-protection as they can be disciplined for the mere act of using a correctional officer's first name. *See e.g. Johnson v. Goodspeed*, No. 1:21-CV-186, 2022 WL 18587784, at *1 (W.D. Mich. Nov. 22, 2022).

plaintiff said nothing about whether she was also suing the defendant in her individual capacity. *Id*. The same is true here: In his fourth filing, Mr. McGuire checked the "official capacity" boxes on the form complaint, but left the "individual capacity" boxes blank. Fourth Filing, R.6, PageID #55-56. Indeed, the need to apply the course of proceedings test here is even greater than in *Rodgers*, where the plaintiff was represented by counsel. After all, "a *pro se* plaintiff without legal training should not necessarily be expected to distinguish between suing a public official in his individual or official capacity when filing a complaint." *Nails*, 2003 WL 22326971, at *4.[6]

Recognizing this, district courts in this circuit routinely apply the course of proceedings test where a plaintiff checks an official capacity box on a form complaint—just as Mr. McGuire did in his fourth filing. *See, e.g.*, *Hutchinson v. City of Middletown, Ohio*, No. 1:20-CV-901, 2021 WL 602612, at *1 (S.D. Ohio Feb.

---

[6] Perversely, the form complaint Mr. McGuire used in his third and fourth filings put him, as a *pro se* plaintiff, at a significant disadvantage vis-à-vis represented litigants. First, it asked him to list defendants' "job or title" in the same sentence it asked whether he was "bringing this complaint against [the defendants] in their individual or official capacity, or both." Fourth Filing, R.6, PageID #55-56. Second, in asking about capacity, the forms did not explain the significance of the choice. *Id.* The first request associates the defendants with their official titles, subtly priming *pro se* litigants to select official capacity. The second flips *pro se* leniency on its head. Counseled plaintiffs don't use *pro se* forms; they format their own complaints. If a counseled plaintiff says nothing about capacity, he gets the benefit of the course of proceedings test. *See, e.g.*, *Moore*, 272 F.3d at 773. The form doesn't give *pro se* litigants that same benefit. Instead, it prompts a decision—one that, if adhered to inflexibly, could be fatal to the *pro se* litigant's claims, as it was here.

29

16, 2021); *Brown v. Med. Staff at Core Civic*, No. 3:21-CV-00527, 2021 WL 4894603, at *2 (M.D. Tenn. Oct. 20, 2021); *Williams v. Troutt*, No. 3:19-CV-00641, 2019 WL 5448307, at *2 (M.D. Tenn. Oct. 24, 2019); *Sapp v. Daviess Cnty. Det. Ctr.*, No. 4:18-CV-P153-JHM, 2018 WL 5892373, at *1 n.1 (W.D. Ky. Nov. 9, 2018); *Jones v. Mays*, No. 3:21-CV-00666, 2022 WL 3651964, at *3 (M.D. Tenn. Aug. 24, 2022); *Williams v. Stinnett*, No. 3:20-CV-00098, 2020 WL 735775, at *2 (M.D. Tenn. Feb. 13, 2020); *Howse v. Hammond*, No. 1:19-CV-00027, 2019 WL 1491744, at *2 (M.D. Tenn. Apr. 3, 2019); *Vaughn v. Judy*, No. 3:21-CV-00370, 2021 WL 2209354, at *2-3 (M.D. Tenn. June 1, 2021).

The district court should have done the same. Instead, it categorically barred his civil rights suit from moving forward.

### ii. *The course of proceedings test, applied to the fourth filing, shows an individual capacity suit.*

Recall that *Moore* was primarily concerned with notice to defendants: "[a]ll a [Section 1983] complaint need do is afford the defendant fair notice of what the claim is and the grounds upon which it rests." *Moore*, 272 F.3d at 772 (internal quotations omitted). And in determining whether there is fair notice, as explained above, *Moore* instructs courts to consider a plaintiff's request for damages, the nature of a plaintiff's claims, any defenses raised, and whether subsequent pleadings put the defendants on notice. *Id.* These factors, even when applied only to the abridged fourth filing, indicate an individual capacity suit.

In that final filing, Mr. McGuire alleges that defendants "slammed" him on his face, "beat [him] with handcuffs," "cracked [his] ribs," "knocked out" his two front teeth, "cuffed and shackled [him]," called him a "dirty bitch," and "popped [his] arm out of place." Fourth Filing, R.6, PageID #65. It also includes requests for "compensatory," "punitive," and "nominal" damages. *Id.* at PageID #58. The nature of his allegations and his request for damages—especially punitive damages—suggest individual, rather than official, capacity claims. *See supra* Section II.A.ii. And because this case is at such an early stage of litigation, treating the complaint as raising individual capacity claims is eminently fair to defendants. *See id.* So, proceeding even on the limited set of facts available in the fourth filing, Mr. McGuire stated individual capacity claims.

## III. Mr. McGuire's allegations showed the personal involvement of each defendant in an excessive force violation.

After artificially limiting the complaint to Mr. McGuire's final filing, the district court opined that it "largely consists of generalized allegations that he does not direct against any named Defendant." Opinion, R.7, PageID #70. This is a profound misreading of Mr. McGuire's filings. Mr. McGuire's allegations—whether we consider his filings together or look only at the final filing—show the personal involvement of several defendants in the deprivation of his constitutional rights.

31

**A. Mr. McGuire's pleadings, taken together, adequately allege defendants' personal involvement in excessive force violations.**

To state a § 1983 claim, a plaintiff must allege that each defendant was personally involved in the unconstitutional activity. *Greer v. City of Highland Park*, 884 F.3d 310, 315-16 (6th Cir. 2018). An official who "actively participate[s] in the use of excessive force" is sufficiently involved to face liability. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Here, Mr. McGuire's pleadings easily satisfy that test: he alleges that all four defendants brutally assaulted him.

In his first filing, Mr. McGuire describes the assault by Brockwell, Ward, and Myers in vivid detail, naming each defendant and their role in the violation of his constitutional rights. First Filing, R.2, PageID #11. While Mr. McGuire was shackled and handcuffed, these officers "snached [sic] [Mr. McGuire's] shackles from under [him]," causing him to fall and crack his tooth. *Id*. "They then straped [sic] [Mr. McGuire] in a chair, and proceded [sic] to beat [him] with hand cuffs [sic] to the mouth resulting in two front teeth being knocked out." *Id.* "Myers held [Mr. McGuire's] head back with his thumbs in [Mr. McGuire's] presure [sic] points" under his jaw. *Id.* As Myers held Mr. McGuire's head back, ''Ward hit [Mr. McGuire] multiple times in [his] sturnim [sic] and stumic [sic]," knocking the wind out of him. *Id.* At the same time, Brockwell "pounded on [Mr. McGuire's] ribbs [sic], cracking them." *Id.* They then "strip[ped] [Mr. McGuire] naked" and put him in a "paded [sic] room with no watter [sic]," returning hours later to mock and

32

threaten him, saying "[w]e will beat you again if you say anything." *Id.* Mr. McGuire's subsequent filings all refer to these events. *See generally* Second Filing, R.4; Third Filing, R.5; Fourth Filing, R.6.

Mr. McGuire likewise describes the assault by Keener in excruciating detail. In his second filing, he describes how Keener woke him up, "yelling and throwing things while [Mr. McGuire] was still laying down," and then "put handcuffs and shackles on [him]." Second Filing, R.4, PageID #18. Keener "escorted [Mr. McGuire] to the paded [sic] room," knocked him to the ground, and "put [Mr. McGuire] in a choke hold." *Id.* Keener then "poped [sic] [Mr. McGuire's] arm out of place." *Id.* While Keener had Mr. McGuire in the chokehold, he called Mr. McGuire a "dirty bitch n*****" three times. *Id.* Like the initial assault by Brockwell, Ward, and Myers, Mr. McGuire refers to these facts in his subsequent filings. *See generally* Third Filing, R.5; Fourth Filing, R.6. Because Mr. McGuire identified his assailants and how they specifically participated in the use of excessive force against him, he adequately alleged personal involvement.

In fact, this Court has repeatedly found enough evidence of personal involvement at summary judgment where the evidence was far less precise than the allegations in Mr. McGuire's filings. *See, e.g.*, *Binay v. Bettendorf*, 601 F.3d 640, 650-51 (6th Cir. 2010) (finding sufficient evidence of personal involvement where plaintiffs could not identify masked officers responsible for handcuffing and holding

33

them at gunpoint because evidence showed defendants were in the room and had necessary tools); *Fazica v. Jordan*, 926 F.3d 283, 289-94 (6th Cir. 2019) (finding sufficient evidence of personal involvement where plaintiff could offer only "distinguishing descriptions" of defendants); *Pershell v. Cook*, 430 F. App'x 410, 414-16 (6th Cir. 2011) (finding sufficient evidence of "active participation" by officers where plaintiff could not identify which ones were responsible for use of force based on "information about the location and conduct of the officers"); *Cole v. City of Dearborn*, 448 F. App'x 571, 576-77 (6th Cir. 2011) (explaining reasonable juror could find both defendants were personally involved in excessive force where plaintiff could not affirmatively identify which officer stepped on his neck and which officer drove his knee into his back). If that evidence survived summary judgment, Mr. McGuire's allegations—which identify his assailants by name and describe their personal involvement in detail—must survive screening.

And the activities in which the defendants were "personally involved" plainly amounted to excessive force. Under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). It is objectively unreasonable for three officers to strap a handcuffed and shackled detainee to a chair and beat his face with handcuffs, knock out his teeth, and break his ribs; it is equally objectively unreasonable for an officer to wake a detainee,

34

shackle and handcuff him, place him in a chokehold, dislocate his arm, and hurl racial slurs at him. *See, e.g.*, *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 540 (6th Cir. 2015) ("[P]retrial detainees had a clearly established right not to be gratuitously assaulted while fully restrained and subdued."); *id.* ("The use of a chokehold on an unresisting—and even an initially resistant—detainee violates the Fourteenth Amendment."); *see also Burgess v. Fischer*, 735 F.3d 462, 474-75 (6th Cir. 2013) (finding takedown of pretrial detainee resulting in fractures to his face and head objectively unreasonable where he was handcuffed, surrounded by four jail officials, and compliant).

## B. Mr. McGuire's fourth filing adequately alleges defendants' personal involvement in excessive force violations.

Even if the district court was correct to disregard Mr. McGuire's first three filings, the fourth filing, standing alone, adequately alleges personal involvement in constitutional violations.

This is particularly clear as to Keener. The relevant portion of the fourth filing reads:

> Captain Keener had cuffed and shackeled [sic] me out of my sleep kicked me to the ground by kicking the back of my knee, the [sic] pulling my arm up chocking [sic] me while calling me a dirtty [sic] bitch. He poped [sic] my arm out of place. I asked for a nurse, they told me I would have to wait until the next day. I was in so much pain I had to pop my arm back in place myself.

Fourth Filing, R.6, PageID #65. In three sentences, Mr. McGuire provided the district court a detailed yet concise description of Keener's assault—more than

35

enough to conclude that Keener was personally involved in the excessive force violation. *See Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (requiring plaintiffs to "allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right"); *Coley*, 799 F.3d at 540-41 ("Under the Fourteenth, Fourth, or Eighth Amendments, assaults on subdued, restrained and non resisting detainees, arrestees, or convicted prisoners are impermissible" and "[t]he use of a chokehold on an unresisting—and even an initially resistant— detainee violates the Fourteenth Amendment"); *Schreiber v. Moe,* 596 F.3d 323, 332 (6th Cir. 2010) ("Striking a neutralized suspect who is secured by handcuffs is objectively unreasonable."). There can be no question that Mr. McGuire's final filing adequately alleged Keener's personal involvement in an excessive force violation.

Mr. McGuire also alleges the personal involvement of Ward and Brockwell in his fourth filing. On the second and third pages of the fourth filing, he names Ward and Brockwell as defendants. Fourth Filing, R.6, PageID #55-56. He then describes the assault in the "Short Summary" on the last page of the filing:

> I was slammed on my face – which in result cracked my side tooth. Then I was straped[sic] in a chair beat with hand cuffs [sic] in my mouth and my ribs cracked. Knocked out of breth [sic] 2x, and my head was held back with thumbs applied under my chin. My two front teeth got knocked out while being beat in my face with hand cuffs [sic].

Fourth Filing, R.6, PageID #65. Though Mr. McGuire does not name Brockwell or Ward in this three-sentence summary, he names Keener in his description of the

36

second assault, allowing the reader to deduce that Brockwell and Ward—the other two officers named as defendants on pages two and three—are the ones responsible for the first assault. *Cf. Cole*, 448 F. App'x at 576-77 (finding that a reasonable juror could find that both defendants were personally involved in excessive force where plaintiff could not affirmatively identify which officer stepped on his neck nor which officer drove his knee into his back when making an arrest). Even on the fourth filing alone, then, Mr. McGuire adequately alleged the personal involvement of three of the four defendants in excessive force violations.

## IV.   Mr. McGuire was entitled to one opportunity to amend his complaint after receiving notice of deficiencies.

The district court dismissed Mr. McGuire's *pro se* complaint with prejudice. Opinion, R.7, PageID #68, 71. Even if the district court was correct to consider only the fourth filing, correct to treat the complaint as raising only official capacity claims, and correct to dismiss for failure to allege personal involvement, it should have dismissed without prejudice. Had Mr. McGuire been given an opportunity to amend his complaint, he could easily have cured the deficiencies identified by the district court.[7]

---

[7] While denials of leave to amend are reviewed "for abuse of discretion," a "dismissal with prejudice and without leave to amend is not appropriate unless it is clear on *de novo* review that the complaint could not be saved by amendment." *Newberry v. Silverman*, 789 F.3d 636, 645-46 (6th Cir. 2015) (cleaned up); *see also Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 (6th Cir. 2021), *cert.*

"Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires.'" *Foman*, 371 U.S. at 182.  Indeed, plaintiffs "must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice" where "a more carefully drafted complaint might state a claim." *Bledsoe*, 342 F.3d at 644-45. If it is "at all possible" that the plaintiff "can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Brown*, 415 F. App'x at 614 (emphasis added). Here, there is no question that Mr. McGuire could have "correct[ed] the defect[s]" identified by the district court. *Id.*

First, to "correct" his capacity selection, all Mr. McGuire would have had to do is check a different box on a form complaint. In fact, just last month, this Court remanded a case so that a district court could consider allowing a plaintiff to amend his complaint to sue an officer in his individual, rather than official, capacity. *McGowan v. Herbert*, No. 22-2033, 2023 WL 2945341, at *4 (6th Cir. Apr. 14, 2023); *see also Burley v. Knickerbocker*, No. 18-cv-12625, 2019 WL 3330804, at *4 (E.D. Mich. Apr. 24, 2019) (recommending *pro se* prisoner be allowed to amend to add individual capacity claims where he accidentally sued officers only in their official capacities), *report and recommendation adopted*, 2019 WL 2610895 (E.D.

---

*denied sub nom. Stewart v. IHT Ins. Agency Grp., LLC Welfare Benefits Plan*, 142 S. Ct. 398 (2021) (citing *Newberry*, 789 F.3d at 646).

Mich. June 26, 2019). This makes good sense: dismissal without prejudice is warranted "[p]articularly where deficiencies in a complaint are attributable to oversights likely the result of an untutored *pro se* litigant's ignorance of special pleading requirements." *Brown*, 415 F. App'x at 614-15; *see also Berndt v. State of Tenn.*, 796 F.2d 879, 882 (6th Cir. 1986) (remanding for an opportunity to amend because it "would be a miscarriage of justice to preclude this *pro se* plaintiff from seeking redress for his alleged injuries on a procedural defect" even though plaintiff had not asked for leave to amend).

Second, as to personal involvement, there is no question that Mr. McGuire could have provided additional details about both assaults—he did just that in his first three filings. "[J]ustice requires" allowing a plaintiff to amend where it is clear that he can add allegations that "would surely state a claim." *Lucas v. Chalk*, 785 F. App'x 288, 291-92 (6th Cir. 2019); *see also McCallum v. Gilless*, 38 F. App'x 213, 216 (6th Cir. 2002) ("District courts have a responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that the pro se litigant would be able to state a meritorious claim"); *Hailey v. Washington*, No. 18-1164, 2018 WL 3954212, at *3 (6th Cir. July 12, 2018) (remanding so plaintiff could amend "where his appellate brief showed that he had a plausible claim").

39

Importantly, the "opportunity to request leave to amend" must be provided "after" the plaintiff has "received notice that his complaint was inadequately pled." *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015). This holds true even if a plaintiff does not seek leave to amend. *Gordon v. England*, 354 F. App'x 975, 981-82 (6th Cir. 2009). Here, Mr. McGuire's suit was dismissed with prejudice in the very same opinion providing him "notice that his complaint was inadequately pled." *Newberry,* 789 F.3d at 646. That was wrong. He must be given "at least one chance" to amend. *U.S. ex rel. Bledsoe*, 342 F.3d at 644.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's dismissal of Mr. McGuire's claims and allow this case to move past the screening stage. Alternatively, this Court should vacate the dismissal with instructions to allow Mr. McGuire leave to amend his complaint.

Dated: May 11, 2023

Respectfully submitted,

*/s/* Megha Ram
Megha Ram**
Cal Barnett-Mayotte*
RODERICK & SOLANGE
MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington, DC 20002
(202) 869-3439
megha.ram@macarthurjustice.org
cal@macarthurjustice.org

** UCLA School of Law students Joseph Gaylin and Zoë Juarez contributed to the preparation of this brief.

* Admitted to the Pennsylvania bar. Not admitted to the DC bar. Practicing from DC under the supervision of DC-licensed attorneys at the MacArthur Justice Center.

*Counsel for Devin D. McGuire*

41

42

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)

1.      This Brief complies with type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and Circuit Rule 32(b) because, according to the word count function of Microsoft Word 2019, the Brief contains 10,064 words excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

2.      This Brief complies with the typeface and type style requirements of Rule 32(a)(5) and (6) of the Federal Rules of Appellate Procedure and Circuit Rule 32(b) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Times New Roman.

Dated: May 11, 2023                        */s/* Megha Ram

**CERTIFICATE OF SERVICE**

I, Megha Ram, hereby certify that on May 11, 2023, I electronically filed the foregoing document through the court's electronic filing system, and that it has been served on all counsel of record through the court's electronic filing system.

*/s/* <u>Megha Ram</u>

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

### US District Court for the Eastern District of Tennessee, Case No. 3:22-cv-217

| Docket Number | Description | PageID |
|---|---|---|
| 2 | Initial Complaint/First Filing | 8-16 |
| 4 | Follow-up letter/Second Filing | 18-37 |
| 5 | First Amended Complaint/Third Filing | 38-53 |
| 6 | Second Amended Complaint/Fourth Filing | 54-66 |
| 7 | Opinion | 67-71 |
| 8 | Order | 72-73 |
| 9 | Notice of Appeal | 74-76 |